## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

JEROME ADRIAN DAVID,                )
                                     )
     Plaintiff,                     )
                                     )
v.                                   )         Case No. CIV-21-534-SLP
                                     )
SCOTT CROW, et al.,                  )
                                     )
     Defendants.                    )

## <u>O R D E R</u>

Before the Court is the Fifth Supplemental Report and Recommendation [Doc. No. 122] (Fifth R.&R.) and Sixth Supplemental Recommendation [Doc. No. 123] (Sixth R.&R.), issued by United States Magistrate Judge Gary M. Purcell pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). Plaintiff, a state prisoner appearing pro se, seeks civil rights relief, alleging violations of his federal constitutional rights under 42 U.S.C. § 1983. In the Fifth R.&R., the Magistrate Judge has recommended granting the Motion to Dismiss of Defendant Michael Aitson [Doc. No. 110], after converting it to a motion for summary judgment. And in the Sixth R.&R., the Magistrate Judge has recommended granting the Motion to Dismiss of Defendants T. Hastings Siegfried and Tammy Foster [Doc. No. 71], after converting it to a motion for summary judgment.[1]

---

[1] Defendant Linda Eike also joined in that Motion to Dismiss. However, the Magistrate Judge had previously recommended that she be dismissed from the lawsuit, *see* Second Supplemental R.&R. [Doc. No. 85] at 50, and, therefore, did not rule on any claims involving Defendant Eike. *See* Sixth R&R at 1, n. 1. The Court has adopted the recommendation of Judge Purcell in the Second Supplemental R.&R. as to dismissal of Plaintiff's claims against Defendant Eike. *See* Order [Doc. No. 177]. Therefore, the Court declines to address any additional grounds for dismissal of Plaintiff's claims against her.

Plaintiff has filed Objections to the Fifth R.&R. and Sixth R.&R. [Doc. Nos. 125, 129]. Accordingly, the Court must make a de novo determination of those issues specifically raised by the Objections, and may accept, modify, or reject the recommended decision. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

## I.   <u>Background</u>

Plaintiff is an inmate in the custody of the Oklahoma Department of Corrections (ODOC). Defendant, Michael Aitson, D.D.S. (Dr. Aitson), is a dentist who, at times relevant to Plaintiff's claims, provided dental services to ODOC inmates housed at the William S. Key Correctional Center (WSKCC). Defendant T. Hastings Siegfried is the former director of the ODOC and served as the director during all times relevant to Plaintiff's claims addressed herein. Defendant Tammy Foster was the correctional health services administrator (CHSA) at WSKCC at all times relevant to Plaintiff's claims address herein.

At issue in the Fifth R.&R. and Sixth R.&R. is Plaintiff's Eighth Amendment claim against Defendants in their individual and official capacities for alleged delay and/or denial of dental care during Plaintiff's incarceration at WSKCC. Plaintiff arrived at WSKCC on November 19, 2020 and remained there until approximately July 1, 2021. *See* Special Report, Attachment 1 [Doc. No. 62-1] at 1.[2]

---

[2] Plaintiff's Second Amended Complaint brings a number of additional claims and names a number of additional defendants. The Court's analysis here is limited to the claims brought against Defendant Aitson, Siegfried and Foster, as addressed in the Fifth R.&R. and Sixth R.&R.

### A.    Plaintiff's Allegations

### 1.    Eighth Amendment Claim Against Dr. Aitson

Plaintiff alleges the following in support of his Eighth Amendment claim against Dr. Aitson.  Dr. Aitson determined Plaintiff's dental needs were "Priority III" under the classification system in the ODOC's Dental Policy.  *See* Second Am. Compl. [Doc. No. 23], Attachment [Doc. No. 23-3] at 4.  Dr. Aitson knew Plaintiff suffered "deteriorating teeth diseases that would cause pain & discomfort upon Plaintiff['s] every day [sic] activities (eatin[g], drinking, talking, smiling, reading etc.) and knew if teeth disease was left untreated for 6 months or better the pain, infection, etc. would escalate to a [P]riority II . . . which is a more serious problem that would require a[n] even more painful surgical treatment and disease would spread to more teeth."  *Id.*

Plaintiff further alleges that Dr. Aitson placed Plaintiff on a treatment plan for restorative care but then refused to reschedule Plaintiff for a follow-up plaque test as required by the ODOC's dental policy.  *Id.*  Plaintiff claims that seven months of delay in receiving restorative treatment "led to months of ongoing pain, discomfort, sleep deprivation, biting holes in mouth because it's difficult to chew food, [and] swelling in face from infections."  *Id.*  As a result of this delay, Plaintiff's "tooth eventually became abscess[ed] to where antibiotics wasn't treating the infection and anti-inflammatory pain medicine was not easing the pain" and the "tooth could not be saved and required

emergency extraction by Dr. Pottorff." *Id*.[3]  As relief, Plaintiff seeks monetary damages in the amount of $200,000.00.  *Id*. at 10.

### 2.    Eighth Amendment Claim Against T. Hastings Siegfried

As to Defendant Siegfried, Plaintiff alleges that he "provided only one dentist and one dental assistant at the WSKCC prison facility with a population of 700 plus inmates." Doc. No. 23-3 at 6.   Plaintiff alleges that Defendant Siegfried "has not established constitutional written standards equally in dental care as medical services" and that he has breached a duty imposed by state law.  *Id*. at 6-7.[4]  As relief, Plaintiff seeks monetary damages in the amount of $200,000.00.  *Id*. at 12.

### 3.    Eighth Amendment Claim Against Tammy Foster

Plaintiff alleges that Defendant Foster "personally participated in acts that caused Plaintiff's ongoing pain & suffering" because she "observed" Plaintiff's dental x-rays and records.  *See* Doc. No. 23-3 at 5.  According to Plaintiff, Defendant Foster should have made sure Plaintiff received "emergency restorative treatment" but instead put Plaintiff

---

[3] As discussed infra, Adam Pottorff, D.D.S. extracted tooth # 12 on June 14, 2021, while Plaintiff was incarcerated at WSKCC.  It is this extraction referenced in the Second Amended Complaint. In his Objection to the Fifth R.&R., Plaintiff also references the extraction of tooth # 4 by Paul Haines, D.D.S., on September 14, 2021, after Plaintiff had transferred from WSKCC and was housed at the Howard McLeod Correctional Center (HMCC).  Plaintiff's Second Amended Complaint was filed on August 9, 2021, prior to the extraction of tooth #4.  Defendant Aitson was not involved in Plaintiff's dental care after Plaintiff transferred to HMCC.  Accordingly, the Court's analysis is confined to Plaintiff's claim regarding the extraction of tooth #12, the only tooth that was extracted during his period of incarceration at WSKCC and addressed in the allegations of the Second Amended Complaint.

[4] In wholly conclusory fashion, Plaintiff also alleges that Defendant Siegfried "prevented Plaintiff a due process."  *Id*. at 7.  The Court finds Plaintiff has failed to allege any due process claim based on such conclusory allegations.

"back on a treatment plan for plaque test." *Id*.  Additionally, Plaintiff alleges Defendant Foster never made sure that any follow-up treatment for a plaque test was being conducted as required by the ODOC's dental policies.  As a result, Plaintiff alleges that he had to have a tooth extracted.[5]  Plaintiff also alleges that Defendant Foster was "aware that there was only one dentist for a prison population at the WSKCC of 700 plus inmates and knew this would cause delays and in some cases denial of emergency dental treatment." *Id*.  As relief, Plaintiff seeks monetary damages in the amount of $200,000.00.  *Id*. at 10.

> **B.    Defendants' Motions to Dismiss**

Dr. Aitson has moved for dismissal of Plaintiff's claim on the following grounds: (1) Eleventh Amendment immunity; (2) failure to exhaust administrative remedies; (3) failure to state a § 1983 claim for a violation of Plaintiff's Eighth Amendment rights; (4) failure to allege Dr. Aitson's personal participation in the alleged violation of Plaintiff's constitutional rights; (5) failure to state a § 1983 claim for a violation of Plaintiff's due process rights; and (6) qualified immunity.  *See* Dr. Aitson's Mot. [Doc. No. 110].  Defendants Siegfried and Foster have moved for dismissal on the same grounds, with the exception of any argument premised on due process rights.  *See* Defs.' Mot. [Doc. No. 71].

As set forth, the Magistrate Judge considered matters outside the pleadings, converted Dr. Aitson's Motion to a motion for summary judgment, and found summary judgment should be entered in Dr. Aitson's favor as to Plaintiff's individual capacity

---

[5] Again, the tooth that is the subject of this claim is tooth #12.

Eighth Amendment claim.  The Magistrate Judge did not address any additional grounds for dismissal raised by Dr. Aitson.

As to the Motion to Dismiss of Defendants Siegfried and Foster, the Magistrate Judge similarly converted their Motion to a motion for summary judgment and found summary judgment should be entered in Defendants' favor based on Plaintiff's failure to exhaust administrative remedies or, alternatively, on the merits of Plaintiff's Eighth Amendment claim brought against them.[6]

### C.    Plaintiff's Objections[7]

Plaintiff argues that, construing the evidence in the light most favorable to him, genuine issues of material fact preclude summary judgment in Dr. Aitson's favor.  Plaintiff takes particular issue with the Magistrate Judge's findings regarding restorative treatment for his teeth.  Plaintiff focuses on the constant pain he suffered, the ineffectiveness of the medications prescribed to him, and the ultimate extraction of two of his teeth – first, tooth #12 and thereafter, tooth #4.[8]  Plaintiff disagrees with the Magistrate Judge's finding that

---

[6] The Magistrate Judge did not distinguish between Plaintiff's individual capacity and official capacity claims in addressing either of the Motions to Dismiss.  As discussed infra, Plaintiff's official capacity claims against Defendants are subject to dismissal on grounds of Eleventh Amendment immunity, as raised in their respective Motions.

[7] The Court notes that Plaintiff's Objections are voluminous and, to some extent, his claims continue to evolve.  To this end, theories Plaintiff has raised for the first time in his Objections are waived and the Court need not address those.  *See United State v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001) ("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived." (citing *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996)).

[8] As previously addressed, the Second Amended Complaint is limited to allegations regarding the extraction of tooth #12.  Moreover, the record contains no evidence that Plaintiff made any complaint regarding tooth #4 while he was at WSKCC.  As discussed more fully herein, the record

Dr. Aitson did not delay or deny treatment for Plaintiff's teeth cavities or "caries." Plaintiff also disagrees with the Magistrate Judge's conclusion that Plaintiff's claim against Dr. Aitson does not give rise to Eighth Amendment liability because the record shows a mere disagreement over the course of treatment provided (i.e., prescribed antibiotics and pain medication) and not deliberate indifference to Plaintiff's serious dental needs.

Plaintiff further argues that he exhausted administrative remedies as to his Eighth Amendment claim and contests the Magistrate Judge's findings to the contrary as to his claims against Defendants Siegfried and Foster. Plaintiff also disputes the Magistrate Judge's finding that, assuming Defendant Foster was somehow involved in his dental treatment, any delay attributed to her was at most the result of negligence.

As discussed more fully below, the Court finds that Defendants are entitled to Eleventh Amendment immunity as to any official capacity § 1983 claims brought against them. The Court further finds that even though the Magistrate Judge did not address the issue of exhaustion as to Plaintiff's Eighth Amendment dental claim against Dr. Aitson, the scope of that claim is necessarily limited to those issues that were properly exhausted through the ODOC's administrative grievance procedures as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). *See Williams v. Wilkinson*, 659 F. App'x 512, 514 (10th Cir. 2016) ("[T]he administrative grievance must have alleged the same facts as the court complaint" as "[a] court claim that was not alleged at the administrative level could not have been exhausted there." (citing *Woodford v. Ngo*, 548

---

indicates the reason tooth #4 was extracted is because the tooth broke. That incident occurred after Plaintiff had left WSKCC.

U.S. 81, 94 (2006)); *see also Estrada v. Smart*, -- F. 4th --, No. 23-1189, 2024 WL 3420365 at *4 (10th Cir. July 16, 2024) (for publication) ("Until the issue of exhaustion is resolved, the court cannot know whether it is to decide the case or prison authorities are to." (internal quotation marks and citation omitted)).  Thus, the Court deems it necessary to address the exhaustion defense raised by Dr. Aitson before proceeding to address the Eighth Amendment claim and Plaintiff's objections to the Magistrate Judge's findings with respect thereto.

The Court finds the exhausted Eighth Amendment claim against Dr. Aitson fails as a matter of law and adopts the recommendation of the Magistrate Judge to grant summary judgment in favor of Dr. Aitson.  Additionally, as discussed in detail below, the Court concludes, as did the Magistrate Judge, that Plaintiff did not satisfy § 1997e(a)'s exhaustion requirement as to Defendants Siegfried and Foster.  Finally, as to Plaintiff's claim against Defendant Foster, the Court finds, in the alternative, that she is entitled to judgment as a matter of law on Plaintiff's Eighth Amendment claim against her.

## II. <u>Governing Standards</u>

The Court recites the standards for dismissal on grounds of Eleventh Amendment immunity and Rule 56 of the Federal Rules of Civil Procedure.  The former standard governs the dismissal of Plaintiff's official capacity claims against Defendants.  And the Rule 56 standard governs the exhaustion defense and the individual capacity claims against Defendants.

A.     **Dismissal on Grounds of Eleventh Amendment Immunity**

The Magistrate Judge did not address Plaintiff's official capacity claims in either the Fifth R.&R. or Sixth R.&R.  But Defendants raised the issue of Eleventh Amendment immunity from suit in their official capacities.  *See* Dr. Aitson's Mot. to Dismiss [Doc. No. 110] at 4-5; Defendants Siegfried and Foster's Mot. to Dismiss [Doc. No. 71] at 11-12.

Eleventh Amendment immunity "concerns the subject matter jurisdiction of the district court." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).  Although Defendants cite the standard of decision under Fed. R. Civ. P. 12(b)(6), their assertion of Eleventh Amendment immunity raises a jurisdictional issue of whether the official capacity claims brought against them are barred by sovereign immunity. The Motion, therefore, is governed by Fed. R. Civ. P. 12(b)(1).  *See Harris v. Owens*, 264 F.3d 1282, 1288 (10th Cir. 2001) ("Once effectively raised, the Eleventh Amendment becomes a limitation on our subject-matter jurisdiction. . . ."); *see also Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1168 (10th Cir. 2012) (stating that " 'the question whether [a] suit states a claim upon which relief can be granted is [not] coincident in scope with [an] Eleventh Amendment inquiry' ") (citation omitted); *Davis v. California*, 2017 WL 4758928, at *1 (D. Kan. Oct. 20, 2017) (construing Rule 12(b)(6) motion as a Rule 12(b)(1) motion because the defendants were seeking dismissal based on sovereign immunity and comity, which are both matters of subject-matter jurisdiction); *Moreno v. Kan. City Steak Co.*, 2017 WL 2985748, at *3 (D. Kan. July 13, 2017) ("Despite the Rule 12(b)(6) label defendant places on its Motion to Dismiss, the court must construe it as a motion under Rule 12(b)(1) if the question it presents is jurisdictional.").

9

"Rule 12(b)(1) motions generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz*, 299 F.3d at 1180 (citation omitted).  Here, Defendants facially attack the sufficiency of the allegations contained in the Complaint, and thus, all well-pleaded factual allegations are accepted as true.  *Id*.

The party seeking federal jurisdiction over his or her claim "has the burden to establish that it is proper, and there is a presumption against its existence." *Salzer v. SSM Health Care of Okla. Inc*., 762 F.3d 1130, 1134 (10th Cir. 2014) (quotations and citation omitted); *see also Kinney v. Blue Dot Servs. of Kan*., 505 F. App'x 812, 814 (10th Cir. 2012) (explaining that the "court may not assume that a plaintiff can establish subject matter jurisdiction; it is the plaintiff's burden to prove it"). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co*., 495 F.2d 906, 909 (10th Cir. 1974) (citation omitted).

### B.    Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In deciding whether summary judgment is proper, the court does not weigh the evidence, but rather determines whether there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986); *see also Roberts v. Jackson Hole Mountain Resort Corp.*, 884 F.3d 967, 972 (10th Cir. 2018).  If there is

sufficient evidence on each side so that a rational trier of fact could resolve the issue either way, the issue is "genuine." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).  "Material" issues of fact include those that, under the substantive law, are essential to the proper disposition of the claim.  *Id.*  The Court construes the evidence in the light most favorable to the nonmovant, drawing all reasonable inferences in the nonmovant's favor.  *Est. of Beauford v. Mesa Cnty., Colo.*, 35 F.4th 1248, 1261 (10th Cir. 2022) (citing *Anderson*, 477 U.S. at 248).

## III.   <u>Undisputed Material Facts</u>[9]

### A.   **Plaintiff's Grievance Submissions**

The undisputed record establishes that Plaintiff did submit one grievance at WSKCC regarding his dental needs, Grievance No. 21-03, which was properly exhausted as of April 12, 2021.  *See* Def. Aitson's Mot. at 8 (identifying Grievance No. 21-03 as "properly exhausted"); Defs. Siegfried and Foster's Mot. at 16-17 (acknowledging that Grievance No. 21-03 was properly exhausted but limiting its scope to the "denial of dental implants); *see also* Pl's Resp. [Doc. No. 121] at 2 ("Both parties agree Plaintiff has satisfied the exhaustion requirement in grievance 21-03.").  The undisputed record further establishes no other grievances regarding Plaintiff's dental needs were properly exhausted.

---

[9] Included here are those material facts supported by the record and not genuinely disputed in the manner required by Fed. R. Civ. P. 56(c).

But the parties do not agree on the scope and/or subject matter of the issues raised by Plaintiff in Grievance No. 21-03. Dr. Aitson characterizes Grievance No. 21-03 as "a disagreement with the dentist's recommended course of treatment" noting that Plaintiff claimed it was "'not fair' to deny him replacement of teeth that are decayed.'" Def.'s Mot. at 8 (citing Doc. No. 62-25 at 487)). Dr. Aitson contends Grievance No. 21-03 only exhausted a medical claim "as to the denial of dental implants." *Id*. at 9. He further contends that Plaintiff "failed to properly exhaust any other issues as to his dental care." *Id*. Defendants Siegfried and Foster construe Grievance No. 21-03 in the same manner as Dr. Aitson. *See* Defs.' Mot. [Doc. No. 71] at 16. Plaintiff, however, views Grievance No. 21-03 as exhausting his claims regarding Dr. Aitson's delay and denial of dental care. *See* Pl.'s Obj. [Doc. No. 125] at 7 (referencing grievance filed January 21, 2021 (Grievance No. 21-03) as the grievance exhausting Dr. Aitson's "delay and denial in treating Plaintiff['s] teeth cavities (caries).").

### 1.    The ODOC's Grievance Process / Plaintiff's Grievance No. 21-03

"The ODOC grievance process has a requirement of informal consultation with staff, then three written steps: a Request to Staff form, a formal grievance, and an appeal to the administrative review authority." *Thomas v. Parker*, 609 F.3d 1114, 1117 (10th Cir. 2010).[10] In order for a grievance to be properly exhausted, an inmate must complete all phases of the ODOC's grievance process. *Id*. at 1118.

---

[10] The ODOC's Inmate/Offender Grievance Process, OP-090124, effective during the period of Plaintiff's claims, is included in the record. *See* Doc. No. 64-1 at 2-23 (Grievance Process, effective 11/30/2020).

### a.      First Written Step: January 4, 2021 Request to Staff

On January 4, 2021, Plaintiff initiated the Grievance Process by submitting a Request to Staff.  Doc. No. 62-25:2.  Plaintiff stated that he had "less than seven teeth at the top of [his] mouth and that makes it hard for [him] to chew food because [he] ha[d] already lost teeth and to get more teeth pulled would only make it harder for [him] to chew and smile."  *Id*. at 3.  He further stated that sometimes he "bite[s] holes in [his] mouth trying to chew with so many missing teeth."  *Id*.  Plaintiff requested that he "receive implants."  *Id*. at 2.[11]

The Grievance Process provides that "[t]he staff member assigned will respond in writing within ten (10) days of receipt to all 'Request to Staff' forms being used to attempt informal resolution."  OP-090124, ¶ V(B)(1)(b)((5)).  It further provides that the staff member "will document any action taken and will cite or quote applicable agency procedures."  *Id*.

On January 12, 2021, Tammie Lauer, the dental assistant at WSKCC, responded to Plaintiff's Request to Staff.  She advised Plaintiff as follows:

> There are a couple of requirements for a denture: One is that you must have a body mass index of 18 or below.  Yours is 25.  Also, it must be a medical necessity.  Policy also says if you came into the system without teeth, they will not be replaced.  DOC does not do implants at all.

62-25:2.

---

[11] Plaintiff vaguely referenced treatment, but it appears he was focused on implants and not restorative treatment.  *See id*. at 3 (I don't think it is fair to me that you compare my situation to "everyone" as a reason or excuse as to why one of the requirements as to why I can't receive implants or treatment, then use the policy as an [sic] reason to deny me treatment (Implants).").

### b.     Second Written Step: January 21, 2021 Grievance No. 21-03

Under the Grievance Process, if a complaint is not resolved informally through a Request to Staff, the inmate may submit a formal grievance.  OP-090124, ¶ VI(A).  "The complaint and relief requested in the grievance must be consistent with the complaint and relief requested on the underlying 'Request to Staff' form.  *Id.*, ¶ VI(A)(1)((c)).

On January 21, 2021, Plaintiff submitted Grievance No. 21-03.  Doc. No. 62-25 at 4-5.  The grievance form requires the inmate to first identify the "nature of [his] complaint." *Id.* at 4.  In this section of the grievance, Plaintiff stated that following a sick call request on December 3, 2020, the dentist did an examination of his teeth and offered to "pull the teeth out."  *Id.*  Plaintiff further stated that he did not think this was his only option and referenced the ODOC Dental Policy, which provides for "temporary or sedative fillings" for "[a]dvanced carious lesions or teeth that have lost restorations."  *Id.* (citing Dental Policy, ¶ (D)(2)(a))).  According to Plaintiff, he asked the dentist if he could get his teeth restored with implants.  *Id.* at 5 ("I asked the dentist can I get teeth *restored with implants* so I can eat food without biting holes in mouth and smile again.") (emphasis added).  The dentist told Plaintiff he did not qualify for restorative care.

Plaintiff further stated that the dentist then set an appointment for Plaintiff "to come back and take a test to see if [he] qualif[ied] for treatment of teeth that are causing [him] serious pain, discomfort, infections, swelling, decay also holes (broken teeth) . . . ."  *Id.* Plaintiff referenced a provision of the ODOC Dental Policy, OP140124, ¶ I(D)(1) which states that a "Priority I" classification is for "[g]ross pathosis of the oral cavity that may provide an immediate threat to the inmate's health."  *Id.*; *see also* Dental Policy [Doc. No.

62-14 at 5.[12]  He then referenced a December 3, 2020 Inmate Request for Health Services.
*Id.* [13]

Plaintiff stated as of the date of the submission of Grievance No. 21-03 (January 21,
2021), two months had passed since the submission of his Request for Health Services and
he still had not taken "a test." *Id.*[14]  He stated the dentist had prescribed a two-week supply
of antibiotics and pain medicine but his teeth were "only getting worst [sic]" and "the pills
[were] not preventing the decay, cavities, discomfort or swelling . . . ." *Id.*

Plaintiff then referenced a January 4, 2021 Request to Staff.  It is this Request to
Staff that Plaintiff identified in the section of the grievance form which requires the inmate
to identify the "[i]nformal action taken (including dates) to resolve the complaint."  As

---

[12] Plaintiff's dental classifications during the time period relevant to his claims is discussed infra.
Plaintiff was never classified as Priority I.

[13] Although in the Grievance, Plaintiff identified the date of the Request for Health Services as
December 3, 2020, the record does not include any request made on that date.  Instead, it appears
the request was made on December 7, 2020.  *See* Doc. No. 63-2 at 2. The Request for Health
Services requested dental services on the following grounds:

> I have a big hole in tooth, where the root canal came out and the nerve is exposed
> and is giving me a whole lot of problems, even infected because there's no way to
> clean hole.  I need the nerve to be killed in tooth.  It's bothering me a lot [and] even
> irritates the nerve when I eat or drink cold or hot drinks or food.

*Id.*  In response to this request, on December 8, 2020, Plaintiff was advised a dental appointment
had been scheduled.  *Id.*  As discussed infra, the record reflects Dr. Aitson saw Plaintiff the next
day on December 9, 2020.  *See* Doc. No. 63-1 at 74-76.

[14] Plaintiff presumably references a plaque test pursuant to Dental Policy OP-140124,
¶ I(D)(3)(f)((5)).  *Id.*

previously addressed, the "action requested" by Plaintiff in the January 4, 2021 Request to Staff was "to receive implants."  Doc. No. 62-25 at 2.[15]

The final section of the grievance form requires the inmate to set forth "the action [he] believe[s] the reviewing authority may lawfully take."  62-25 at 4.  Plaintiff stated: "I would like to receive proper treatment for the restoration of m[y] teeth."  *Id.*

The Grievance Process provides that the reviewing authority will respond to the grievance and forward the answered grievance form to the inmate within 20 days of receipt of the grievance.  OP-090124 ¶ VI(C)(1).  On January 28, 2021, the Reviewing Authority, Tammy Foster, responded to Plaintiff's Grievance No. 21-03 as follows:

> Pertinent information from your electronic health record (EHR) was reviewed.  According to your chart, you were screened as a priority III per OP-140124D #3.  You have had a treatment plan done on 12/29/20[16] per OP-140124 F #3 and your first plaque test done per 140124 E #5 on 1/28/21 and was a 43.1% which has to be 35% or lower on at least two occasions separated by a two week minimum time frame, for inmates who will retain any natural teeth.  Your dental plan is in place and being followed per policy.

*See* Doc. No. 62-25 at 6.

### c.   Third (and Final) Written Step: February 8, 2021 Appeal of Grievance No. 21-03

Under the Grievance Process, Plaintiff could appeal the denial of his grievance to the Administrative Review Authority (ARA).  *See* OP-090124, ¶ VIII(A).  Grounds for an

---

[15] Although Plaintiff included two different requests to staff in his grievance, it was not rejected on that ground.  *See* OP-090124, ¶ VI(A)(1)((F)) ("Only one issue or incident is allowed per grievance.").

[16] The treatment plan date appears to be a typographical error.  The record reflects the referenced treatment plan occurred on December 9, 2020.  *See* Doc. No. 63-1 at 74.

appeal include newly discovered evidence or probable error committed by the reviewing authority such as would be grounds for reversal.  *Id.*

On February 8, 2021, Plaintiff raised both of these grounds in support of his appeal of the denial of Grievance No. 21-03.  Doc. No. 62-25 at 7-9.  He identified as "newly discovered evidence" information included in the denial of his grievance and specifically, Defendant Foster's reference to provisions of the ODOC Dental Policy.  *Id.*  He stated "this is when I discovered the diagnosis of my teeth and the seriousness of the conditions."  *Id.* He referenced "periodontal disease" and stated "delay is not helpful to treatment" of this disease.  *Id.* at 8.   But Plaintiff did not identify any treatment or reference a failure to provide treatment by Dr. Aitson.

As to probable error, he cited Okla. Stat. tit. 59, § 328.19.  That statutory provision identifies acts "regarded as practicing dentistry within the meaning of the State Dental Act."  *Id.*, § 328.19(A).  He made specific reference to subdivision 14 which includes as acts of dentistry the furnishing of prosthetic dentures.  *Id.*, § 328.19(A)(14).[17]  He then stated that Defendant Foster "made an error in her decision that could be grounds for reversal" when she told him that the "DOC does not do implants at all."  *Id.*

---

[17] Subdivision (A)(14) states in full that "acts regarded as practicing dentistry within the meaning of the State Dental Act" include: "[f]urnishing, supplying, constructing, reproducing, or repairing, or offering to furnish, supply, construct, reproduce, or repair, prosthetic dentures, sometimes known as plates, bridges, or other substitutes for natural teeth for the user or prospective user thereof[.]"  Okla. Stat. titl. 59, § 328.19(A)(14).

On April 12, 2021, the ARA, Cheri Atkinson, Medical Services Manager, denied relief to Plaintiff on his appeal of Grievance No. 21-03.  Doc. No. 62-25:10.  Ms. Atkinson's decision reflects the following:

> **Request**:
>
>> "The CHSA Tammy Foster made an error in her decision that could be grounds for reversal see OK ST T 59 § 328.19 . . ."
>
> **Response**:
>
>> The department's chief dental officer, Paul Haines, D.D.S., investigated your dental concerns.  Dr. Haines concluded that you are receiving dental care and treatment in accordance with OP-140124.
>>
>> According to OP-140124, in part, any highly specialized dental procedure, including implants and treatment associated with implants are not available through the Oklahoma Department of Corrections.

*Id*.  Plaintiff was advised that the ruling was final and concluded the exhaustion of administrative remedies.  *Id*.  As stated, Grievance No. 21-03 is the only grievance regarding Plaintiff's dental care that was fully exhausted.[18]

### B.    Plaintiff's Dental Treatment at WSKCC

#### 1.    ODOC Dental Services Policy

Pursuant to the ODOC's Dental Services Policy, OP-140124 (Dental Policy), dental services within the ODOC include "specific guidelines to ensure that inmates receive routine and emergency dental health care in a cost-effective manner."  *See* Doc. No. 62-14

---

[18] Although not addressed by the parties, the record reflects that Plaintiff was placed on grievance restriction as of April 20, 2021.  *See* Doc. No. 62-26 at 7.  Such placement, however, did not prevent Plaintiff from submitting grievances.  It merely imposed additional requirements on Plaintiff in making any grievance submissions.  *See* Doc. No. 64-1 at 18-20, OP-090124, ¶ X(B).

at 2.  The Dental Policy incorporates a "dental classification system" to "ensure that priority is given to inmates whose oral pathosis is detrimental to their general physical health."  *Id*. Dental services are provided "strictly on a priority basis" and "in accordance with the inmate's needs as established by the facility dentist."  *Id*.  Dental emergencies "take precedence over any priority of need status."  *Id*.

The facility dentist is responsible for "provid[ing] dental care services consistent with community standards utilizing the priority system[.]"  *Id*. at 3, ¶ I(A)(4)(a).  The objectives of the ODOC's dental program include: "[r]eliev[ing] pain and alleviat[ing] infection;" "[e]ncouraging inmates to preserve and maintain their own natural detention through education;" and "[r]estor[ing] and help[ing] the inmate maintain [his] oral cavity in a healthy condition."  *Id*. at 3-4, ¶ I(B).

As part of an inmate's reception into the ODOC, "[a]n initial priority classification code will be assigned to each inmate . . . at the assessment and reception center."  *Id*. at 5, ¶ I(D).  "Access to dental health care will be prioritized in accordance with the inmate's current classification."  *Id*.  An inmate is to be classified "by the highest priority that their condition by quadrant indicates and treatment by quadrant will be provided whenever possible."  *Id*.

As relevant to Plaintiff's claims (and as discussed more fully below), Priority II indicates "[p]athosis of the oral cavity that may not provide an immediate threat to the inmate's health, but in the dentist's opinion, if left untreated for three to six months will

become a Priority I problem." *Id*. at 6, ¶ I(D)(2).[19]   Priority II may include: "[t]eeth for which routine restoration is not a terminal treatment, and therefore endodontics or extraction is required[.]" *Id*.   Priority II may also include "[r]oot fragments with evidence of pathosis." *Id*.

Priority III may include: "[r]outine restorative dentistry" and "[r]oot fragments." *Id*. at 6-7, ¶ I(D)(3).   Before receiving Priority III treatment, an inmate must have "a documented plaque index of 35% or lower on at least two occasions separated by a two week minimum time frame, for inmates who will retain any natural teeth."   *Id*. at 7, ¶ I(D)(3)(f)((5)).   However, "[t]reatment for periodontal disease may proceed before plaque indices are performed . . . ." *Id*., ¶ I(D)(3)(f)((6)).

### 2.   Plaintiff's Dental Classifications

On November 13, 2020, Plaintiff saw a dentist, Dr. Dustin Watterson, at the Lexington Assessment and Reception Center (LARC) and received his initial priority classification code.   Dr. Watterson classified Plaintiff as Priority II.   *See* Doc. No. 63-1 at 90.   He noted that Plaintiff had ten missing teeth.   *Id*.   He further noted that Plaintiff had "existing restoration" on eight teeth.   *Id*.   And Dr. Watterson noted "restoration indicated" on eleven teeth, including tooth #12.   *Id*.

Plaintiff transferred from LARC to WSKCC on or about November 18, 2020.   *See* Doc. No. 62-1 at 2 (Plaintiff's ODOC Consolidated Record Card).   Approximately one month later, on December 9, 2020, Plaintiff saw Dr. Aitson at WSKCC.   The record does

---

[19] Priority I includes facial or intraoral swelling "arising from acute infection of the teeth."  Doc. No. 62-14:5-6, ¶ 1(D)(1)(e).

not reflect whether Dr. Aitson reviewed Plaintiff's dental chart and his initial priority classification code assigned by Dr. Watterson.[20]   Unlike Dr. Watterson, who classified Plaintiff as Priority II, Dr. Aitson classified Plaintiff as Priority III.  *See* Doc. No. 63-1 at 74.[21]

The record further reflects that, subsequent to these initial classifications, two other dentists classified Plaintiff alternatively as Priority II or Priority III.  During a brief period in which Dr. Aitson was absent from WSKCC, Dr. Pottorff classified Plaintiff as Priority II during a "limited" dental exam on May 24, 2021, and a subsequent extraction of tooth #12 on June 14, 2021.  *Id*. at 41,43.

Plaintiff transferred from WSKCC to Howard McLeod Correctional Center (HMCC) on July 1, 2021.  *See* Doc. No. 62-1 at 2.  Shortly after his arrival at HMCC Plaintiff was again classified as Priority III by Dr. Paul Haines, Chief Dental Officer, on two separate occasions; first as part of a "DENTAL TREATMENT PLAN" on July 27, 2021, and again on September 14, 2021 when tooth #4 was extracted.  *See* Doc. No. 63-1 at 10, 21-22.

---

[20] Dr. Aitson's dental care assistant at WSKCC, Tammie Lauer, however, had previously conducted a dental chart review on November 19, 2020, and noted the Priority II classification.  *See* Doc. No. 63-1 at 87.

[21] Dr. Aitson noted that both tooth #12 had a filling (amalgam).  *See* Doc. No. 63-1 at 74-75.  And he further noted that tooth #12 had "decay into pul[p]."  *Id*. at 75.

### 3.     Dr. Aitson's Treatment of Plaintiff at WSKCC

Dr. Aitson saw Plaintiff four times during the sixth-month period December 2020 through June 2021.[22]  The Court addresses each of those four dates below.

### a.     December 9, 2020

Dr. Aitson first saw Plaintiff on December 9, 2020 in response to Plaintiff's Request for Health Services submitted two days prior, on December 7, 2020.  *See* Doc. No. 63-2 at 2.  At that time, Plaintiff had been at WSKCC for approximately three weeks.  As previously set forth, Plaintiff complained that he had "[a] big hole in tooth, where the root canal came out and the nerve is exposed and is give me a whole lot of problems, even infected because there's no way to clean hole."  *Id*.  Plaintiff requested for the "nerve to be killed in tooth" and stated that "[i]t's bothering me a lot" and it "irritates the nerve when I eat or drink cold or hot drinks or food."  *Id*.

Dr. Aitson's treatment notes do not reflect treatment for any particular tooth or teeth.  Instead, he created a "DENTAL TREATMENT PLAN" and classified Plaintiff as "Priority III."  Doc. No. 63-1 at 74-76.   As part of Plaintiff's treatment plan, Dr. Aitson noted that the following teeth had "caries" : ## 2, 5, 7, 9, 10, 12 and 15.  As to tooth #12, he further noted that it had "decay into pulp."  *Id*. at 74-75.  Dr. Aitson gave Plaintiff a thirty-day

---

[22] Dr. Aitson was serving as the dentist at WSKCC at the time of Plaintiff's arrival but left WSKCC in approximately April 2023. The exact date on which Dr. Aitson left WSKCC is not clear.  But in a response dated April 26, 2021 to a Request for Health Services submitted by Plaintiff, he was advised that "Dr. Aitson will be out for awhile." Doc. No. 63-2 at 5.  Dr. Aitson thereafter returned to WSKCC but the exact date on which he returned is unclear.  Dr. Aitson saw Plaintiff on June 24, 2021, so he had returned to WSKCC at least as of that date.  Doc. No. 63-1 at 37.

prescription of ibuprofen for pain, through January 7, 2020.  *See* Doc. No. 63-6 at 29.  He also prescribed an antibiotic for a ten-day period, or through December 18, 2020.  *Id*. at 30.

According to Plaintiff, when Dr. Aitson conducted the examination, he offered to pull teeth but Plaintiff refused as he did not think this was his only option.  62-25:4 (Grievance No. 21-03 submitted January 21, 2021 – "The dentist did an examination on my teeth and offered me the option 'pull the teeth out.'").  Plaintiff does not identify which tooth or teeth Dr. Aitson offered to pull.  Also, according to Plaintiff, Dr. Aitson set an appointment for Plaintiff to come back and take a plaque test to see if he qualified for treatment of the teeth that were causing him pain and discomfort.  *Id*. at 5 ("The dentist set me an appointment to come back and take an [sic] test to see if I qualify for treatment of teeth that are causing me serious pain, discomfort, infections, swelling, decay . . . .").

The record also includes an "Inmate Request" that Plaintiff submitted on December 9, 2020.  It appears this request was submitted the same day, but after Plaintiff had seen Dr. Aitson.  Plaintiff stated:

> The dentist said I don't qualify for certain treatment because the time of my incarceration, according to policy.  I need dental work done.  I don't have money to buy dental floss off canteen so I don't know how [you] expect me to properly pass this test?  I need my teeth treated (implants).

Doc. No. 1-1 at 40.

On December 14, 2020, a prison official responded as follows:

> Mr. David – We just saw you to begin your treatment plan & at that time, you were told that you could use floss from the office as long as you didn't leave the clinic with it.  So you can pass the test.  We can remove the teeth that are causing pain, if you are unable to wait until you meet eligibility requirements.  We already explained that policy is set up this way because of time constraints.  There is no way that we could ever do multiple root canals

on everyone.  Your teeth that you need removed have been put off too long.
You will have another appointment & we can discuss this further if need be.

*Id.*

On January 22, 2021, Plaintiff presented with a "toothache with swollen face."  *See*
Doc. No. 63-1 at 63.  He was seen by nursing staff who "co-sign[ed] note to dental for
possible [follow-up] from this nursing protocol."  *Id.*  Plaintiff was given more antibiotics
through January 30, 2021  *Id.*; *see also* 63-6 at 20-21.[23]

Four days later, on January 26, 2021, Plaintiff submitted a Request for Health
Services.  *See* Doc. No. 63-2 at 3.  He complained of an infection in his teeth, that he had
been waiting for over two months for treatment and that he needed stronger antibiotics
because the antibiotics he had been given were not effective to help the swelling, prevent
an abscess, allow him to eat properly and prevent pain.  *Id.*  This request was submitted
approximately five days after Plaintiff's submission of Grievance No. 21-03.

### b.      January 28, 2021

On January 28, 2021, Dr. Aitson saw Plaintiff a second time.  Dr. Aitson conducted
a plaque test and scored Plaintiff at 43.1 percent.  *See* Doc. No. 63-1 at 59.  This plaque
test appears to have been provided in response to Plaintiff's January 21, 2021 submission
of Grievance No. 21-03.   *See* Doc. No. 62-25 at 6 (discussed *supra*). Plaintiff's score

---

[23] Dr. Aitson co-signed the treatment notes.  *See* Doc. No. 63-1 at 63.

rendered him ineligible to receive restorative treatment under the Dental Policy.  Dr. Aitson

prescribed more antibiotics, through February 9, 2021.  *See* Doc. No. 63-6:19.[24]

It further appears that Plaintiff was scheduled two weeks out for another plaque test

because on February 8, 2021, a treatment note states "dental reschedule."  *See* Doc. No.

63-1 at 53.  And on February 10, 2021, a treatment note states: "dental no show."  *Id*. at

52.  The dental assistant, Tammie Lauer, later stated in a response to Plaintiff's Request

for Health Services that he had not shown up for his plaque test.  *See* Doc. No. 63-2 at 4.

Plaintiff's antibiotic prescription had ended one day before on February 9, 2021.

On March 11, 2021, Plaintiff submitted a Request for Health Services.  He

complained that his "priority III (periodontal disease)" was not getting better.  *Id*.  He

advised that he had "holes in teeth from previous dental treatment where root canals had

fallen out" and that it was hard for him to chew food.  *Id*.  He further stated that "[t]he

swelling and infection continues" that he had "cavities [and] missing teeth which causes

[him] to bite holes in [his] mouth when trying to chew food."  *Id*.  He asked for "more

medicine and pain medicine" and stated that he had "teeth that are decayed really bad" for

which he needed treatment.  *Id*.  As stated, Ms. Lauer, told him that he had not been able

to pass the plaque test, that he had been rescheduled for one but did not show, and that she

would schedule another one soon.  *Id*.

---

[24] There is no record of treatment for any particular tooth or teeth.  Nor is there a record that
Plaintiff requested treatment for any particular tooth or teeth.

### c.      March 17, 2021

On March 17, 2021, Dr. Aitson saw Plaintiff for the third time.  *See* Doc. No. 63-1 at 50.  He conducted a plaque test (as Plaintiff had been told on March 11, 2021 would be scheduled), and scored Plaintiff at 31.8 percent.  *Id.*  This score brought Plaintiff within the eligibility range for restorative treatment under the Dental Policy, subject to Plaintiff scoring within the acceptable plaque index range a second time "separated by a two week minimum time frame," i.e., Plaintiff could test again sometime after March 31, 2021.  *See* Doc. No. 62-14 at 7, ¶ I(D)(3)(F)((5)).   Dr. Aitson prescribed more antibiotics through March 26, 2021 (ten days) and ibuprofen through May 15, 2021 (sixty days).  *See* Doc. No. 63-6 at 15-16.

As set forth supra, the appeal of the denial of Grievance No. 21-03 was denied on April 12, 2021.  And as discussed infra, the remaining complaints submitted by Plaintiff are not properly exhausted and cannot be grounds for Plaintiff's Eighth Amendment claim against Dr. Aitson.  The Court, nonetheless, includes these additional complaints to provide the full record of Plaintiff's dental care while at WSKCC.

On April 23, 2021, Plaintiff submitted a Request for Health Services.  He complained that the antibiotics were not working and the plaque test did not constitute "treatment" for his periodontal disease.  He further complained that his dental problems were worsening and that he was in constant pain.  He requested to see the dentist.  *See* Doc. No. 63-2 at 5.

In response, on April 26, 2021, the dental assistant, Ms. Lauer, told Plaintiff that Dr. Aitson would be "out for a while" and that until he returns, no routine care would be

provided, but only treatment for dental emergencies.  *Id.*[25]  Ms. Lauer further told Plaintiff

that if he wanted teeth extracted to let her know "ASAP" as the dentist "comes only one

day each week."  *Id.*

Plaintiff continued to complain of pain and request dental treatment during the first

several weeks of May 2021.  *Id.* at 6-7.  On May 17, 2021, Plaintiff stated in a Request for

Health Services that he "qualif[ied] for restoration of teeth" and that he would not "agree

to an extraction if the dentist is not going to replace the teeth with substitutes for natural

teeth."  *Id.* at 7.  On May 18, 2021, in response, the dental assistant, Ms. Lauer, told Plaintiff

that he would be scheduled for dental treatment and acknowledged that he needed "several

fillings & a root canal or extraction."  She also told him he would need to pass another

plaque test.  *Id.*

On May 20, 2021, a different dentist, Dr. Adam Pottorff, treated Plaintiff and

classified him as "Priority II."  *See* Doc. No. 63-1 at 44.  Dr. Pottorff also prescribed

antibiotics for Plaintiff for a "previously [diagnosed] condition and [treatment] plan."  *Id.*

Four days later, on May 24, 2021, Dr. Pottorff again treated Plaintiff who presented

with complaints that tooth #5 and tooth #12 were causing severe pain at night.  *See* Doc.

No. 63-1 at 43.  Dr. Pottorff advised Plaintiff that his "current treatment plan" classified

tooth #5 and tooth #12 "as non-restorable due to depth of caries" and explained that those

teeth required extraction.  *Id.*  Dr. Pottorf further advised Plaintiff that "non-urgent

---

[25] The record is silent as to the reason for Dr. Aitson's brief absence.  But Plaintiff's Eighth
Amendment claim is not based on Dr. Aitson's absence from WSKCC.  And, in any event, he did
not file any grievance regarding Dr. Aitson's absence.

restorations [were] not being done at this time due to facility dentist being absent" and that the clinic was "emergency only at this time." *Id*. Dr. Pottorff offered to extract teeth #5 and #12 but Plaintiff refused. *Id*.

Then, on June 7, 2021, Plaintiff submitted a Request for Health Services stating: "I've never had tooth pain like this!" *See* Doc. No. 63-2 at 8. He further stated that the antibiotics and pain medication were doing "nothing" and that for over six months he had been complaining that his tooth could have been saved. *Id*. On June 15, 2021, Dr. Pottorf extracted tooth #12. *Id*. at 9 ; *see also* Doc. No. 63-1 at 41; Doc. No. 63-4 at 2. Next to his signature on the consent form, Plaintiff wrote: "I wanted to save tooth but dentist chose a less eas[y] treatment. I didn't have a[n] option." *See* Doc. No. 63-2 at 9.

### d.    June 24, 2021

It appears that Dr. Aitson returned to WSKCC at some point after June 7, 2021 and before June 24, 2021. He treated Plaintiff a fourth and final time on June 24, 2021. *See* Doc. No. 63-1 at 37. Dr. Aitson again classified Plaintiff as "Priority III." *Id*. He addressed Plaintiff's postoperative symptoms from the extraction performed by Dr. Pottorf on June 15, 2021 and prescribed antibiotics and pain medication. *Id*.

Dr. Aitson's June 24, 2021 treatment appears to be Plaintiff's last dental treatment at WSKCC. On July 1, 2021, Plaintiff was transferred from WSKCC to HMCC. See Doc. No. 62-1 at 2.

### C.    Plaintiff's Dental Treatment at HMCC

On July 27, 2021, Dr. Paul Haines, Chief Dental Officer, provided a DENTAL TREATMENT PLAN for Plaintiff and classified him as Priority III. 63-1 at 21-22. The

Plan identified two teeth as "[e]xtraction indicated" – tooth #5 and tooth #9. *Id.* at 21.[26]

Dr. Haines "stressed removal of bad teeth," advised Plaintiff he was "not eligible" for any partials or dentures and told Plaintiff he could not continue antibiotics and pain medications indefinitely. *Id.* at 22.

Approximately two months later, on September 14, 2021, Dr. Haines extracted Plaintiff's tooth #4 as "not restorable." *Id.* at 10. The treatment notes include "physical findings" that tooth #4 was "broken off to gumline." *Id.*

In sum, the record shows that during the period of his incarceration at WSKCC, the dental treatment Plaintiff received included the prescription of antibiotics and ibuprofen, the conduction of two plaque tests, and the extraction of tooth #12. Two months after Plaintiff left WSKCC and arrived at HMCC, tooth #4 was extracted. Dr. Aitson did not perform either of the two extractions. His care was limited to prescribing antibiotics and ibuprofen, conducting the two plaque tests pursuant to the ODOC's dental policy, and a post-operative visit regarding the extraction of tooth #12.

## IV.   Discussion

### A.    Exhaustion of Administrative Remedies

The Court first addresses the affirmative defense of exhaustion of administrative remedies. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined

---

[26] The Plan contains no reference to tooth #4 – a tooth, as discussed above, that Plaintiff references in his Objection but that had not yet been extracted at the time of the filing of his Second Amended Complaint.

in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see also Jones v. Bock*, 549 U.S. 199, 216 (2007). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Id.* at 211. The exhaustion requirement applies on a claim-by-claim basis. *Id.* at 223. "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id.* at 204; *see also Estrada*, 2024 WL 3420365 at *9 ("Requiring a prisoner to file a grievance is not a technicality; instead it is mandatory to ensure prison efficiency and administrative agency authority by allowing prison officials to promptly review incidents and gather evidence, as well as maintain control over the flow of prison life." (internal quotation marks and citations omitted)).

To properly exhaust, an inmate must comply with prison grievance procedures. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* at 218. Further, the Tenth Circuit has held that "[a properly completed] grievance satisfies § 1997e(a)'s exhaustion requirement so long as it provides prison officials with enough information to investigate and address the inmate's complaint internally." *Kikumura v. Osagie*, 461 F.3d 1269, 1285 (10th Cir. 2006), *overruled on other grounds as recognized in Robbins v. Okla.*, 519 F.3d 1242, 1246 (10th Cir. 2008).

Plaintiff's January 15, 2021 Grievance addresses: (1) a request for implants; (2) a complaint that he had not yet been scheduled for a plaque test; and (3) a reference to a two-

week supply of antibiotics and pain medication that was not "preventing the decay, cavities, discomfort or swelling." His February 8, 2021 Grievance Appeal makes a rather vague reference to "periodontal disease" and that "delay is not helpful to treatment of this disease." And he again appears to protest the denial of any request for implants.

Plaintiff's claim against Dr. Aitson does not involve any request for implants. The Court, therefore, focuses on his request to be scheduled for a plaque test and his complaint that as of January 15, 2021, the antibiotics and pain medication were not preventing the decay of his teeth or his discomfort.

As to the plaque test, Plaintiff was scheduled to receive the test in response to his grievance submission. The plaque test was then administered contemporaneously with the grievance response on January 28, 2021. To the extent Plaintiff's claim against Dr. Aitson is based on delay in scheduling the *initial* plaque test, that claim is exhausted.

But Plaintiff's Second Amended Complaint alleges that Dr. Aitson refused to schedule Plaintiff for a *follow-up* plaque test. See Doc. No. 23-3 at 4 (emphasis added). As the record shows, Plaintiff's initial plaque test score was not within the acceptable range of the Dental Policy percentages to render him eligible for restorative treatment. In his Complaint, Plaintiff contends Dr. Aitson failed to reschedule Plaintiff for a *follow-up* plaque test. But Plaintiff did not submit any additional grievance regarding a follow-up plaque test. Therefore, any claim based on this conduct is not exhausted.[27] *See Barnes v.*

---

[27] Moreover, as set forth in the recitation of Dr. Aitson's treatment of Plaintiff, it appears that Plaintiff was scheduled for a follow-up plaque test on February 10, 2021, but that Plaintiff did not show for that test. Regardless, Plaintiff was given a follow-up plaque test on March 17, 2021, at which time Plaintiff scored within the eligibility range for restorative treatment. He was still

*Allred*, 482 F. App'x 308, 312 (10th Cir. 2012) ("[T]he similarity of issues alone is insufficient to satisfy exhaustion of administrative remedies."); *Sayed v. Profitt*, 415 F. App'x 946, 949 n. 4 (10th Cir. 2011) (prisoner who had raised and exhausted the issue of a right to perform partial ablution did not also raise the issue of a right to perform full ablution, despite the similarity of the issue).

What is left for the Court's consideration is Plaintiff's complaint that the antibiotics and pain medication prescribed by the dentist were not preventing the decay, cavities, discomfort or swelling with his teeth.  Plaintiff's grievance raised a generalized concern. He did not identify any particular dental problem, or any specific treatment that he requested (other than the scheduling of a plaque test) and that was, or was not, being provided to him.  This generalized grievance did not "sufficiently raise the issue in his civil complaint" concerning either *seven months* of delayed treatment or the emergency extraction of his tooth.  *Barnes*, 482 F. App'x at 312; *see also Ross v. Cnty. of Bernalillo*, 365 F.3d 1181, 1188 (10th Cir. 2004) (noting that prisoner's complaint "articulate[d] a laundry list of problems he encountered in seeking to obtain appropriate medical treatment from the time of his [shoulder] injury on November 29, 1999 to July 2000[,] but that record was devoid of evidence that prisoner made use of the grievance procedures to complain of inadequate medical care after December 1, 1999) *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007)).

---

required to pass a second plaque test, but the record demonstrates that no dentist was available at WSKCC to provide that plaque test.  Plaintiff did not grieve any issue related to a follow-up plaque test or the unavailability of a dentist to provide the same.

Plaintiff's dental complaints after the conclusion of the appeal of Grievance No. 21-03 are not sufficiently exhausted as he did not bring any such matters to the attention of prison officials.  *See Ross,* 365 F.3d at 1188 ("A grievance obviously cannot exhaust administrative remedies for claims based on events that have not yet occurred.  Nor does a grievance exhaust administrative remedies for all future complaints of the same general type.").

Thus, while the Court does not construe Plaintiff's grievance submissions as narrowly as Dr. Aitson, i.e., that Plaintiff's grievance was limited to the issue of a request for implants or dentures, the Court finds summary judgment in favor of Dr. Aitson is proper on grounds of failure to exhaust as to any Eighth Amendment claim based on: (1) a delay in the scheduling of any follow-up plaque test, i.e., any plaque test to be conducted after the initial January 28, 2021 plaque test; and (2) any delay or denial of dental treatment occurring subsequent to the submission of Grievance No. 21-03 or, more generously, subsequent to the denial of his appeal of Grievance No. 21-03.

As to Plaintiff's claim against Defendant Siegfried, Plaintiff did not raise any claim in Grievance No. 21-03 that addressed his complaint that WSKCC was inadequately staffed or that the dental care policies were unconstitutional.[28]  The Court, therefore, concurs with

---

[28] In the context of complaining that his plaque test had not been timely scheduled, Plaintiff stated: "[t]he elements of a dental care system are similar to the elements of a medical care system and for example, involve ensuring that an adequate number of appropriately qualified staff [are] available."  *See* Doc. No. 62-25 at 5 (citations omitted).  But he did not address this issue in his underlying request to staff, nor does the grievance specifically complain about staffing issues. Moreover, in his appeal of the denial of Grievance No. 21-03, Plaintiff acknowledged that he "was scheduled for a plaque test."  *See* Doc. No. 62-25 at 7.  And he did not raise any issue on appeal regarding any alleged inadequate staffing as the basis for his grievance.

the findings of the Magistrate Judge that Defendant Siegfried is entitled to judgment as a matter of law in his favor because Plaintiff failed to exhaust administrative remedies.[29] Although the Magistrate Judge addressed, in the alternative, the merits of Plaintiff's Eighth Amendment, individual-capacity claim against Defendant Siegfried, the Court deems any alternative finding unnecessary.

Similarly, Plaintiff's claim against Defendant Foster is not exhausted.  His claim against her relates to her role in denying Grievance No. 21-03.  He did not separately grieve any issue pertaining thereto.  And in his appeal of Grievance No. 21-03, Plaintiff stated, without any specificity, only that Defendant Foster had committed "probable error" in her decision and then referenced a state statutory provision defining acts constituting the practice of dentistry.  Plaintiff did not assert in any way that Defendant Foster personally delayed providing dental care to Plaintiff as he alleges in the Second Amended Complaint.

Alternatively, even if Defendant Foster's role in denying the grievance were sufficient to demonstrate her personal participation, for the reasons discussed infra, her conduct did not give rise to Eighth Amendment liability.

---

[29] In his Objection to the Sixth R.&R., Plaintiff states that he exhausted his policy claim against Defendant Siegfried and points to his January 4, 2021 Request to Staff where he states that due to a facility lockdown, he had not reviewed the Dental Policy.  *See* Doc. No. 62-25 at 2.  Plaintiff argues that this statement constitutes sufficient notice to prison officials that "the policies w[ere] the result of delays and denial of Plaintiff receiving any restoration treatment."  *See* Doc. No. 129 at 7.  The Court disagrees.  Nothing about Plaintiff's statement that he wanted to review the Dental Policy would alert prison officials that he was challenging that policy as causing a delay in his dental care.  Moreover, as previously set forth, Plaintiff never filed a grievance challenging the requirement that he pass the plaque tests prior to receiving treatment.  He only filed a grievance to challenge the alleged delay in scheduling an initial plaque test.

**B.**     **Plaintiff's Eighth Amendment Claim – Delay / Denial of Dental Care**

Having determined the scope of Plaintiff's Eighth Amendment claim that is properly exhausted, the Court proceeds to address the merits of that claim.

**1.**     **Official Capacity Eighth Amendment Claim**

The Court grants Defendants' Motions to Dismiss, without converting them to motions for summary judgment, as to Plaintiff's official capacity Eighth Amendment claims on grounds of Eleventh Amendment immunity.  The Eleventh Amendment grants states immunity from suits brought pursuant to § 1983 unless such immunity is specifically waived or overridden by Congress. *See Welch v. Tex. Dept. of Highways and Public Trans.*, 483 U.S. 468, 472-74 (1987) (finding federal courts barred from considering § 1983 actions against states unless state's sovereign immunity is specifically waived or overridden by Congress). Congress did not abrogate the states' Eleventh Amendment immunity through the enactment of 42 U.S.C. § 1983.  *See Quern v. Jordan*, 440 U.S. 332, 345 (1979). Neither has the State of Oklahoma waived its sovereign immunity except in limited circumstances not applicable here. *See Ramirez v. Okla. Dep't of Mental Health*, 41 F.3d 584, 589 (10th Cir.1994) (noting that "Oklahoma has not waived its Eleventh Amendment immunity").

Moreover, a claim against Defendants in their official capacities is essentially a claim against the State of Oklahoma and therefore, the amendment's proscription applies to them.  *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 (10th Cir. 2010) ("'[A]suit against a state official in his or her official capacity . . . is no different than a suit against the State itself.'" (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58,

71 (1989)).  And "Eleventh Amendment immunity applies regardless of whether a plaintiff seeks declaratory or injunctive relief, or money damages." *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1252 (10th Cir. 2007).   Defendants, therefore, are immune from suit in their official capacities.[30]

### 2.   Individual Capacity Eighth Amendment Claim

Plaintiff also seeks to impose liability against Defendants in their individual capacities for violating his Eighth Amendment rights.  As set forth, Plaintiff's claim against Defendant T. Hastings Siegfried is unexhausted and the Court grants summary judgment in favor of Defendant Hastings Siegried on this basis, deeming it unnecessary to review the merits of Plaintiff's Eighth Amendment claim against him.

Plaintiff's individual-capacity claim against Dr. Aitson is partially exhausted.  The Court reviews the merits of this claim only as to the matters that were properly exhausted.

As for Defendant Foster, like Defendant Hastings Siegfried, the Court finds that Plaintiff's claim against her is unexhausted.  The Court nonetheless addresses, in the alternative, the merits of Plaintiff's individual-capacity claim against her.

---

[30] Plaintiff's Eighth Amendment claim is limited to conduct which occurred at WSKCC where he is no longer incarcerated.  In fact, WSKCC is a closed facility. And Plaintiff does not seek any form of prospective injunctive relief against Defendants.  Instead, Plaintiff only seeks monetary damages against Defendants Aitson, Siegfried and Foster.  *See* Second Am. Compl. [Doc. No. 23-3] at 10, 12.  Therefore, the *Ex parte Young* exception does not apply.  *See Muscogee (Creek) Nation v. Pruitt*, *supra*, 669 F.3d at 1167 ("To determine whether the *Ex parte Young* exception applies, we "need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." (internal quotation marks and citation omitted)).

a.     **Eighth Amendment Standard – Deliberate Indifference to Dental Needs**

"Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *See Requena v. Roberts*, 893 F.3d 1195, 1215 (10th Cir. 2018) (brackets and internal quotation marks omitted). A prisoner's medical needs include proper dental care. *Ramos v. Lamm*, 639 F.2d 559, 576 (10th Cir. 1980).

A deliberate indifference claim has "both an objective and a subjective component." *Id*. (internal quotation marks omitted). The objective component requires evidence that the medical deprivation was "sufficiently serious." *Id*. (internal quotation marks omitted). The subjective component requires evidence that "the prison official acted with a sufficiently culpable state of mind." *Id*. (internal quotation marks omitted).

"[A]ccidental or inadvertent failure to provide adequate medical care, or negligent diagnosis or treatment of a medical condition do not constitute a medical wrong under the Eighth Amendment." *Ramos*, 639 F.2d at 575. An inmate "has a constitutional right only to medical care – not to the type or scope of medical care which he personally desires." *Sherman v. Klenke, N.P*., 653 F. App'x 580, 586 (10th Cir. 2016) (quoting *Henderson v. Sec'y of Corr*., 518 F.2d 694, 695 (10th Cir. 1975) (additional citation omitted)). "A mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. *Ramos*, 639 F.2d at 575. This is because the Eighth Amendment protects

from the "infliction of punishment" – it does not give rise to claims sounding in negligence or medical malpractice. *Self v. Crum*, 439 F.3d 1227, 1235 (10th Cir. 2006).

### i.    Objective Component

The Court assumes, without deciding, that Plaintiff's dental pain satisfies the objective component of a deliberate indifference claim. The record supports a reasonable inference that Plaintiff suffered pain for several days if not weeks and that he continued to require pain medication that he claimed was ineffective. *See Al-Turki v. Robinson*, 762 F.3d 1188, 1193-94 (10th Cir. 2014) (declining to "precisely delineate . . . the exact boundaries of the line between a trivial twinge of pain and the significant substantial pain that gives rise to an Eighth Amendment claim, but finding that "several hours of untreated severe pain . . . fall[s] on the actionable side of the line").

### ii.    Subjective Component

The Court focuses its inquiry on the subjective component. Plaintiff must show that Dr. Aitson and/or Defendant Foster acted with a "sufficiently culpable state of mind." *Requena*, 893 F.3d at 1215 (internal quotation marks omitted). "The deliberate indifference standard lies 'somewhere between the poles of negligence at one end and purpose or knowledge at the other.'" *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). Under this standard, "a prison official cannot be held liable 'unless the official knows of and disregards an excessive risk to health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Self*, 439 F.3d at 1231 (quoting *Farmer*, 511 U.S. at 837).

### b.      Dr. Aitson

In his Objection, Plaintiff argues that the initial examination by Dr. Aitson demonstrates he knew that Plaintiff was suffering from "**a progressive destruction** of bone and tooth decay."  Doc. No. 125 at 7 (emphasis in original).  He references, in part, Dr. Aitson's "findings" set forth in his "DENTAL TREATMENT PLAN."  Although Plaintiff acknowledges his plaque index test on January 28, 2021 rendered him ineligible for restorative treatment, he nonetheless argues it was "obvious" to Dr. Aitson that Plaintiff's "progressive cavities" were causing his "decaying, painful tooth condition to worsen and required additional treatment."  *Id*. at 9.  And Plaintiff further argues that Dr. Aitson "provided medication he knew was not working."  *Id*. at 11; *see also id*. at 18 (Dr. Aitson "intentionally prescribed Plaintiff the same ineffective medicine [clindamycin] he knew was not improving Plaintiff['s] teeth conditions nor relieving pain.").

As Plaintiff acknowledged in his own grievance submissions, Dr. Aitson offered to pull the teeth that were causing Plaintiff's pain, but Plaintiff did not agree with this course of treatment.  Instead, he wanted his teeth to be "restored."  But to qualify for such restorative treatment, Plaintiff was required to pass the plaque test.[31]  The record demonstrates Dr. Aitson scheduled Plaintiff for two plaque tests.  Plaintiff did not pass the

---

[31] Plaintiff takes issue with the Magistrate Judge's finding that Dr. Watterson did not recommend Plaintiff for restorative treatment.  *See* Pl.'s Obj. [Doc. No. 125] at 3; Fifth R.&R. [Doc. No. 122] at 10.  But the Court finds this issue non-dispositive.  Even if Dr. Watterson had determined tooth # 12 qualified for restorative treatment, Plaintiff was required to follow the Dental Policy, i.e., pass the two plaque tests, before receiving that treatment.  Moreover, Plaintiff's grievance was based on the failure to timely schedule a plaque test.  He did not raise any issue that the *requirement* of passing the plaque test should not apply to him or otherwise challenge the Dental Policy's provisions with respect to the plaque-test requirement.

first one, but did pass the second one.  Under the Dental Policy, Plaintiff had to pass two plaque tests before becoming eligible for restorative care.

The record fails to support a reasonable inference that Dr. Aitson acted with deliberate indifference.  Instead, the record demonstrates a classic example of a disagreement in treatment.  Plaintiff did not want any of his teeth to be pulled even though this treatment option was available to him.  Instead, he wanted his teeth to be restored.[32] In response to Plaintiff's requested treatment, Dr. Aitson proceeded to follow the Dental Policy by providing Plaintiff the required plaque tests.  To this end, there is no evidence that Dr. Aitson intentionally denied a prescribed course of treatment, including treatment of Plaintiff's pain.  *Redmond v. Crowther*, 882 F.3d 927, 939–40 (10th Cir. 2018) (explaining "[t]he subjective component requires showing the prison official 'knew the inmate faced a substantial risk of harm and disregarded that risk by failing to take reasonable measures to abate it.'" (quoting *Martinez v. Beggs*, 563 F.3d 1082, 1088–89 (10th Cir. 2009)); *see also Self*, 439 F.3d at 1233 ("So long as a medical professional provides a level of care consistent with the symptoms presented by the inmate, absent evidence of actual knowledge or recklessness, the requisite state of mind cannot be met."). To the contrary, Dr. Aitson provided antibiotics and pain medications to Plaintiff to help alleviate his symptoms in the interim.  *See Wishneski v. Andrade*, 572 F. App'x 563, 569 (10th Cir. 2014) ("[I]n assessing the chosen method of treatment, it must be kept in mind

---

[32] As early as Plaintiff's January 4, 2021 Request to Staff, he acknowledged that it was "unhealthy" for him to "keep the teeth that are decayed."  *See* Doc. No. 62-25 at 3.  At that time he was requesting implants.

that a doctor is required to take only 'reasonable measure to abate' the inmate's medical condition." (quoting *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006)).  Nothing about this conduct evinces deliberate indifference.

Plaintiff relies heavily on an unpublished Tenth Circuit decision to support his claim, *Brooks v. Colo. Dep't of Corr.*, 715 F. App'x 814 (10th Cir. 2017).  In *Brooks*, the prison dentist offered to remove Mr. Brooks's tooth.  The tooth required removal because the dentist had neglected to provide dental care for months.  The district court found no Eighth Amendment violation based on the dentist's offer to remove the tooth.  But the Tenth Circuit faulted the district court for "fail[ing] to consider Mr. Brooks's evidence about neglect in the *preceding* months." *Id*. at 822 (emphasis added).   The Tenth Circuit relied on the following as evidence of the dentist's deliberate indifference:

- Dr. Blake had known in May 2010 that Mr. Brooks suffered from a cavity but *did nothing*.

- Mr. Brooks had cracked the same tooth one month later and asked for a dentist to fix the tooth.

- Mr. Brooks had complained 2-3 months later that he needed to see a dentist as soon as possible because he had a tooth with exposed nerves, resulting in great pain.

- A prison official had recognized the next day that Mr. Brooks was in pain and that his tooth was decaying.

- Dr. Blake had failed to provide treatment again until January 2011, over 7 months after he had diagnosed the cavity.

*Id*. at 822 (emphasis added).  The Tenth Circuit held that "[t]his evidence could lead a reasonable fact-finder to conclude that Dr. Blake had turned a blind eye to a sufficiently serious dental condition." *Id*.

41

The Court finds this case is distinguishable from *Brooks*.  First, Dr. Aitson did not "do nothing."  By Plaintiff's own admissions, Dr. Aitson offered to pull Plaintiff's teeth *at the outset* of his treatment.[33]  Because Plaintiff did not want this treatment, Dr. Brooks prescribed antibiotics and pain medication and told Plaintiff he would set an appointment.  Second, Dr. Aitson administered two plaque tests in accordance with the Dental Policy.  Third, Dr. Aitson promptly saw Plaintiff in response to each of his requests for dental care.  Although Plaintiff argues his dental care was unnecessarily delayed, a delay in treatment that is unintentional, or even negligent, however serious the harm, does not violate the Constitution.

Unlike Mr. Brooks who was provided no treatment, Plaintiff was provided treatment, but disagreed with the treatment being provided.  The extraction of tooth # 12 in  May 2021, did not result from a lack of treatment, or Dr. Aitson turning a blind eye, but instead from Plaintiff's disagreement about the type of treatment he should receive.[34]  On the record presented, the undisputed facts fail to demonstrate Dr. Aitson acted with the

---

[33] In *Stack v. McCotter*, 79 F. App'x 383, 389 (10th Cir. 2003), the court referenced the fact that "[a]t least one court has held that a policy of requiring that only extractions will be performed for dental problems is constitutionally deficient."  *Id.*, 79 F. App'x at 388 (citing *Heitman v. Gabriel*, 524 F. Supp. 622, 627 (W.D. Mo. 1981)).  Of course, the ODOC's Dental Policy is not an "extraction only" policy, nor has Plaintiff raised any such challenge.

[34] Plaintiff argues in his Objection that he suffered the "unnecessary loss of an easily reparable tooth" but offers not facts to support that his tooth was "easily reparable."  *See* Doc. No. 125 at 12.  The record shows to the contrary.  As set forth, tooth #12 was identified upon initial examination by Dr. Aitson as having "decay into pulp."

requisite mental state to satisfy the subjective component of Plaintiff's Eighth Amendment claim.[35]

### c.      Defendant Foster

Finally, Plaintiff has failed to satisfy the subjective component with respect to any Eighth Amendment claim against Defendant Foster.  In his Objection to the Sixth R.&R., Plaintiff states that Defendant Foster "could be held liable for her inaction from 1-21-2021 til [sic] 1-28-2021."  *See* Doc. No. 129 at 32.  He points, again, to her review of Plaintiff's grievance and his dental records in relation thereto.  He notes that on January 22, 2021, Plaintiff presented to medical with a toothache and swollen face and states that Defendant Foster "had first-hand information" that his "conditions were worsening and [he] needed immediate restorative care."  *Id*.  And he argues that she "did nothing about getting Plaintiff any treatment to relieve pain or getting Plaintiff to a dentist that would or could.  *Id*. at 32-33.

Fundamentally, Defendant Foster's role in denying Grievance No. 21-03 is not actionable.  Plaintiff wholly fails to allege any facts to show that she personally participated in the delay or denial of dental care.  Instead, she only reviewed Plaintiff's dental records for purposes of addressing Grievance No. 21-03 as the CHSA.  *See Gallagher v. Shelton*,

---

[35] Plaintiff also relies on *Oxendine v. Kaplan*, 241 F.3d 1272 (10th Cir. 2001).  In that case, the Tenth Circuit addressed the sufficiency of allegations of deliberate indifference in the context of a dismissal motion under Fed. R. Civ. P. 12(b)(6) and not in the context of a fully developed summary judgment record.  Additionally, the facts of that case did not involve dental care but, instead, a surgery on an inmate's finger and post-operative signs of complications from that surgery.  The plaintiff alleged those complications had not been adequately addressed by the prison's doctor and assistant because they failed to timely seek specialized medical assistance. The Court finds *Oxendine* inapposite.

587 F.3d 1063, 1069 (10th Cir. 2009) ("[A] denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983"); *Sherman*, 653 F. App'x at 591 (allegations that doctor was aware of prisoner's alleged inadequate course of treatment and improperly denied his grievance related to delay and denial of care failed to establish doctor's personal participation and dismissal of Eighth Amendment claim, therefore, was warranted).

Notably, in *Bird v. Lampert*, 839 F. App'x 218 (10th Cir. 2020), the Tenth Circuit addressed a strikingly similar claim against a grievance manager at the prison. The court found no personal participation by the grievance manager. *Id.* at 222-23. As the court explained, the grievance manager "did nothing more than deny [the] prison grievance on the basis that [plaintiff] was receiving dental care and was scheduled to soon see [the dentist] and plaintiff failed to "cite any evidence that [the grievance manager] was aware of the delay before he filed his grievance or that she had any involvement in, or prior knowledge of, [the prison's] difficulty staffing a full-time dentist."). *Id.* at 223.

Even if the Court were to presume that Defendant Foster was somehow involved in the delay of Plaintiff's dental care, Plaintiff has failed to show that she acted with deliberate indifference. Plaintiff points only to a seven-day period in which Defendant Foster was involved in any such treatment. And, contrary to Plaintiff's assertion, in response to the grievance he was scheduled for a plaque test and seen by Dr. Aitson on January 28, 2021, on the same day that Defendant Foster responded to his grievance. At that time, Dr. Aitson prescribed additional antibiotics and pain medication. Thus, the record shows that to the extent Defendant Foster may have been involved in his care, she facilitated Plaintiff

receiving treatment and did not ignore him.  The record fails to support any reasonable inference that Defendant Foster acted with deliberate indifference to Plaintiff's dental needs.

In reaching the conclusion that Dr. Aitson and Defendant Foster are entitled to summary judgment, the Court is certainly not unsympathetic to Plaintiff's serious dental needs or the plight of many incarcerated persons who have such needs.  Indeed, as the Tenth Circuit has long-recognized, "[p]risoners generally have more extensive dental problems than the average citizen. Consequently dental care is one of the most important medical needs of inmates.  *Ramos*, 639 F.2d at 576.  But the record here, as to Plaintiff's properly exhausted claim, simply fails to support any reasonable inference of Defendants' deliberate indifference.

## V.   <u>Additional Issues</u>

As noted, the R.&R. did not address additional bases for dismissal raised in Defendant Aitson's Motion – (1) Dr. Aitson's lack of personal participation; (2) Plaintiff's failure to state a claim for a due process violation; and (3) qualified immunity.  The facts set forth above adequately demonstrate Defendant Aitson's personal participation in the alleged violation of Plaintiff's Eighth Amendment rights, but fail to demonstrate the subjective component of Plaintiff's Eighth Amendment claim.  *See, e.g., Vasquez v. Davis*, 882 F.3d 1270, 1275 (10th Cir. 2018) (to recover damages in a § 1983 action, a plaintiff must show that the defendant personally participated in the alleged constitutional violation; where the plaintiff alleges a defendant violated the Eighth Amendment by acting with deliberate indifference to a serious medical need, the plaintiff must prove as to the

defendant both the objective and subjective component of the claim). The Court further finds Plaintiff has not raised any claim against Dr. Aitson for violation of his due process rights and, therefore, deems it unnecessary to address that ground for dismissal. As to Dr. Aitson's assertion of qualified immunity, he argued that Plaintiff failed to state a claim based on the fact that he did not receive dental implants. But the Court does not construe Plaintiff's Eighth Amendment claim as based on a denial of dental implants and, therefore, rejects Defendant's assertion of qualified immunity on that ground.[36]

## VI.   **Conclusion**

IT IS THEREFORE ORDERED as follows:

1)      Defendant Aitson's Motion to Dismiss [Doc. No. 110] is GRANTED as to Plaintiff's Eighth Amendment official capacity claim and that claim is DISMISSED WITHOUT PREJUDICE as barred by Eleventh Amendment immunity.[37]

---

[36] Defendants Siegfried and Foster also raise the defense of qualified immunity. But they do so in the most conclusory manner. *See* Defs.' Mot. at 23-24. And because the Court finds summary judgment is proper in favor of Defendants on grounds of exhaustion or, alternatively as to Defendant Foster on grounds that Plaintiff fails to demonstrate a violation of his Eighth Amendment rights, the Court need not address the issue of qualified immunity. The Court nonetheless notes that such a defense may be successful on grounds of lack of clearly established federal law. *See Bird*, 839 F. App'x at 224 (addressing specificity requirement of demonstrating clearly established federal law and finding no clearly established federal law as to Plaintiff's claims against corrections defendants for delay in dental care under facts similar to those at issue here).

[37] "Because the Eleventh Amendment involves sovereign immunity, the official capacity claims should [be] dismissed 'without prejudice' rather than 'with prejudice.'" *Shue v. Lampert*, 580 F. App'x 642, 644 (10th Cir. 2014) (citing *Pettigrew v. Okla. ex rel. Okla. Dep't of Pub. Safety*, 722 F.3d 1209, 1212 (10th Cir. 2013); *Rural Water Sewer & Solid Waste Mgmt., Dist. No. 1, Logan Cnty., Okla. v. Guthrie*, 654 F.3d 1058, 1069 n. 9 (10th Cir. 2011)).

2)       Defendant Aitson's Motion to Dismiss [Doc. No. 110], construed as a motion for summary judgment, is GRANTED IN PART as to Plaintiff's Eighth Amendment, individual-capacity claim.

3)       The Court ADOPTS the Fifth Supplemental Report and Recommendation [Doc. No. 122] to the extent it is not inconsistent with the supplemental findings set forth herein.

4)       The Motion to Dismiss [Doc. No. 71] of Defendants Siegfried and Foster is GRANTED IN PART as to Plaintiff's Eighth Amendment official capacity claims against them and those claims are DISMISSED WITHOUT PREJUDICE as barred by Eleventh Amendment immunity.

5)       The Motion to Dismiss [Doc. No. 71] of Defendants Siegfried and Foster, construed as a motion for summary judgment, is GRANTED IN PART as to Plaintiff's Eighth Amendment, individual-capacity claims against them.

6)       The Court ADOPTS the Sixth Supplemental Report and Recommendation [Doc. No. 123] to the extent it is not inconsistent with the supplemental findings set forth herein.

Accordingly, summary judgment is entered in favor of Defendants Aitson, Siegfried and Foster as to Plaintiff's Eighth Amendment individual-capacity claims.  Plaintiff's Eighth Amendment official-capacity claims against Defendants Aitson, Siegfried and Foster are dismissed without prejudice.  A separate judgment will be entered.

IT IS SO ORDERED this 19th day of July, 2024.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE